IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| STATE OF ILLINOIS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 10-cv-5720 |
| AU OPTRONICS CORP., *et al.*, | ) | Judge Robert M. Dow, Jr. |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

On August 10, 2010, the State of Illinois ("the State" or "Plaintiff"), through its Attorney General Lisa Madigan, filed a lawsuit against AU Optronics Corporation, *et al.* ("Defendants") in the Circuit Court of Cook County, Illinois, pursuant to the Illinois Antitrust Act ("IAA"). Plaintiff's complaint alleges that Defendants engaged in a conspiracy to fix prices of thin film transistor liquid crystal display ("LCD") panels between 1998 and 2006. Plaintiff seeks civil penalties, injunctive relief, declaratory relief, and damages based on alleged overcharges that the State and individual Illinois residents paid for LCD products.

Defendants removed the case to this Court, invoking its diversity jurisdiction under the Class Action Fairness Act ("CAFA").[1] Pending before the Court is Plaintiff's motion to remand the case to the Circuit Court of Cook County [28]. For the reasons stated below, the Court grants Plaintiff's motion.

---

[1] Following the removal of this case, the Judicial Panel on Multidistrict Litigation ("JPML") entered an order conditionally transferring this action to the Northern District of California for inclusion in *In re: TFT-LCD (Flat Panel Antitrust Litig.*, MDL No. 1827. Plaintiff moved to vacate the conditional transfer order. On February 3, 2011, the JPML entered an order [MDL docket entry 165] postponing its decision on Plaintiff's motion to vacate until this Court issues its ruling on Plaintiff's motion to remand [28].

## I. Legal Standard

In general, an action filed in state court may be removed to federal court only if the action originally could have been brought in federal court. 28 U.S.C. § 1441(a). Courts are to interpret the removal statute narrowly. *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). Any doubts that persist regarding the propriety of removal are to be resolved in favor of the plaintiff's choice of forum in the state courts. *Id.*

CAFA enacts special rules governing removal of class actions. Under CAFA, a defendant may remove a class action to federal district court so long as the case satisfies the statute's special diversity and procedural requirements. First, CAFA requires minimal diversity of citizenship among parties to the action. 28 U.S.C. § 1332(d)(2). Thus, for covered class actions, CAFA abdicates the complete diversity rule that generally applies in federal diversity cases. See *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 680, 684 (9th Cir. 2006). Second, an action removable under CAFA must satisfy the statute's definition of a "class action" or a "mass action." CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). CAFA defines a "mass action" as "any civil action * * * in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under [28 U.S.C. § 1332(a)]." 28 U.S.C. § 1332(d)(11)(B)(i).

The Seventh Circuit has explained that CAFA did not alter the established legal rule that the proponent of federal jurisdiction bears the burden of establishing removal jurisdiction. *Brill*

*v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005). Nor did CAFA displace the principle that a plaintiff is the master of its complaint and may choose to structure its claims to "remain outside of CAFA's grant of jurisdiction." *Anderson v. Bayer Corp.*, 610 F.3d 390, 393 (7th Cir. 2010).

II.     **Analysis**

Plaintiff has filed a motion to remand this action to state court on the ground that this Court lacks subject matter jurisdiction under CAFA. [28.] Plaintiff's motion presents three questions: (1) whether this case satisfies the minimal diversity requirement necessary to create federal subject matter jurisdiction under CAFA, (2) whether the case constitutes a "class action" under CAFA, and (3) whether the case constitutes a "mass action" under CAFA.

> A.     **Whether Minimal Diversity Exists Between the Parties so as to Establish Jurisdiction in this Court Under CAFA**

Whether minimal diversity exists under CAFA hinges on the identity of the real party in interest. See *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980). Accordingly, the first question presented by Plaintiff's remand motion is whether the State of Illinois is a real party in interest. If it is, then the action fails to comport with the minimal diversity jurisdictional requirement of CAFA. However, if individual Illinois residents who would benefit from the damages claims brought by the State are the real parties in interest, they would create the minimal diversity sufficient to vest jurisdiction in this Court.

The Supreme Court long ago established that, for diversity purposes, a "citiz en" must be a "real and substantial part[y] to the controversy." *Navarro*, 446 U.S. at 460-61 (1980) (citing *McNutt v. Bland*, 2 How. 9, 15 (1844); *Marshall v. Baltimore & Ohio R. Co.*, 16 How. 314, 328-29 (1854); *Coal Co. v. Blatchford*, 11 Wall. 172, 177 (1871)). In other words, a court determining whether it has diversity jurisdiction over an action "must *disregard nominal or*

*formal parties* and rest jurisdiction only upon the citizenship of *real parties to the controversy*." *Id.* (emphasis added).

Courts have defined a real party in interest as a party that has a substantial stake in the case. See *Illinois v. SDS West Corp.*, 640 F. Supp. 2d 1047, 1052 (C.D. Ill. 2009) (citing *Wisconsin v. Abbott Labs.*, 341 F. Supp. 2d 1057, 1061 (W.D. Wis. 2004)). In determining whether a named plaintiff is a real party in interest, a court must examine the "essential nature and effect of the proceeding, as it appears from the entire record." *In re New York*, 256 U.S. 490, 500 (1921) (citing cases); see also *Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 250 (7th Cir. 1981) (citing *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945) (overruled on other grounds by *Lapides v. Board of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002))). If a court determines on the basis of the complaint that the named plaintiff is merely a nominal party, then the court should look past the complaint to determine if any unnamed plaintiffs are the real parties in interest. See *Navarro*, 446 U.S. at 461.

A court may not consider a plaintiff-State a "citizen" for diversity jurisdiction purposes if the State is a real party in interest. *Nuclear Eng'g Co.*, 660 F.2d at 250 (citing *Ford*, 323 U.S. at 464). A State is a real party in interest when it "articulate[s] *an interest apart from the interests of particular private parties*, *i.e.*, the State must be *more than a nominal party*. The State must express a quasi-sovereign interest." *Illinois v. Life of Mid-America Ins. Co.*, 805 F.2d 763, 766 (7th Cir. 1986) (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982)) (emphasis added); see also *SDS West Corp.*, 640 F. Supp. 2d at 1050 (holding that when a State sues on behalf of its residents without a sovereign or quasi-sovereign interest, it is only a nominal party and thus not the real party in interest). Advancing a quasi-sovereign interest is enough to make a State a real party in interest. See *Hood ex. rel Mississippi v. Microsoft Corp.*,

428 F. Supp. 2d 537, 542 (S.D. Miss. 2006); *Alabama ex rel. Galanos v. Star Service & Petroleum Co., Inc.*, 616 F. Supp. 429, 431 (D. C. Ala. 1985); *New York ex rel. Abrams v. General Motors Corp.*, 547 F. Supp. 703, 706 n.5 (S.D.N.Y. 1982). Similarly, advancing a sovereign or quasi-sovereign interest allows a State to sue as *parens patriae* on behalf of its citizens. See *SDS West Corp.*, 640 F. Supp. 2d at 1050 (holding that a State must articulate a quasi-sovereign interest in order to have *parens patriae* standing).

An action brought by a State advances a quasi-sovereign interest (such that the State is the real party in interest) when the action concerns a "substantial segment of the [State's] population." *SDS West Corp.* 640 F. Supp. 2d at 1050 (quoting *Snapp*, 458 U.S. at 607). The Supreme Court has ruled that "a State has a quasi-sovereign interest in the health and well-being – both physical and economic – of its residents in general." *Snapp*, 458 U.S. at 607. The Court suggested in *Snapp* that "[o]ne helpful indication in determining whether an alleged injury to the health and welfare of its citizens suffices to give the State standing to sue as *parens patriae* is whether the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers." *Id.* For example, where a State legislature enacts a statute that seeks to "secur[e] an honest marketplace" for State residents, then the statute expresses a quasi-sovereign interest and grants the State standing to bring a *parens patriae* suit. *SDS West Corp.*, 640 F. Supp. 2d at 1050 (holding that "securing an honest marketplace" is "a well established quasi-sovereign interest").

A State that brings a suit in which it asserts not a quasi-sovereign interest but *exclusively* the private interests of a small subset of the State's population is not a real party in interest; rather, it is only a nominal party. *Snapp*, 458 U.S. at 601-02. "[A] State may, for a variety of reasons, attempt to pursue the interests of a private party, and pursue those interests *only* for the

sake of the real party in interest. Interests of private parties are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement. In such situations, the State is no more than a nominal party." *Id.* (emphasis added)). Because the State is a nominal party in that circumstance, a court may look beyond the complaint to determine whether certain unnamed plaintiffs (rather than the State) are the real parties in interest. See *Missouri ex rel. Koster v. Portfolio Recovery Assocs., Inc.*, 686 F. Supp. 2d 942, 945-46 (E.D. Mo. 2010).

The analysis is somewhat complicated when a State brings an action, like the one at bar, that seeks *both* broad injunctive relief *and* damages for a particular subset of citizens. Defendants urge the Court to adopt the Fifth Circuit rule (also followed by one district court in the Third Circuit) that a court dissect the claims in the complaint and find jurisdiction over a case in which the unnamed plaintiffs on whose behalf a State asserts damages are minimally diverse from the defendant under CAFA, even if the State is indisputably a real party in interest with respect to other claims. See *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008); *West Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441 (E.D. Pa. 2010); see also *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 2011 WL 1902678, at *10 (4th Cir. May 20, 2011) (Gilman, J., dissenting).[2]

*Allstate* involved an antitrust *parens patriae* action in which the State attorney general sought damages for residents as well as broad-based injunctive relief and forfeiture. *Allstate*, 536 F.3d at 422-23. The defendant removed the case to federal court, and the district court denied the plaintiff's motion to remand. *Id.* at 423-24. Affirming the district court's decision,

---

[2] In *Hood v. F. Hoffman-La Roche, Ltd.*, the District Court of the District of Columbia noted that it found *Allstate* to be "instructive," but ultimately did not decide the same issue, as it deemed the State to be a real party in interest with respect to some of the claims asserted and held that the State's presence in the lawsuit defeated diversity. 639 F. Supp. 2d 25, 29-32 (D.D.C. 2009).

the Fifth Circuit opined that "defendants may pierce the pleadings to show that the * * * claim has been *fraudulently pleaded* to prevent removal." *Id.* at 424-25. The court first stated that because the State did not object to the district court's decision to pierce the pleadings, that issue was waived. *Id.* at 425. The court next observed that the State had statutory authority to bring *parens patriae* antitrust actions, but explained that:

> The parties vigorously debate whether the Attorney General's *parens patriae* authority is extensive enough to allow the State to sue for treble damages in a representative capacity under state law. We need not address that issue. Even assuming *arguendo* that the Attorney General has standing to bring such a representative action, the narrow issue before this court is who are the real parties in interest: the individual policyholders or the State. We conclude that as far as the State's request for treble damages is concerned, the policyholders are the real parties in interest.

*Id.* at 429. Notably, the court did not address the fact that the State presumably had a sovereign or quasi-sovereign interest in the injunctive relief and forfeiture claims. In other words, the court did not expressly determine whether the State was a real party in interest or only a nominal party in the action as a whole. Nor did the court determine that the State had fraudulently pleaded the complaint to prevent federal jurisdiction. Rather, the court simply looked beyond the complaint and determined that unnamed plaintiffs were real parties in interest as to the suit's claims for money damages. *Id.* at 429. The court determined that these unnamed plaintiffs created diversity and that the district court therefore had jurisdiction over the case. *Id.* at 430.

Relying on *Allstate*, Defendants argue that, although the State here may be a real party in interest with respect to the enforcement-related claims in the complaint, it is not a real party in interest with respect to the money damages claims asserted for the benefit of the overcharged individuals. Defendants further argue that because CAFA requires only *minimal* and not *complete* diversity, this Court has jurisdiction by virtue of the unnamed plaintiffs who are real parties in interest as to the damages claims.

The Supreme Court, Seventh Circuit, and district courts in this and other circuits have taken a different approach to assessing real-party-in-interest questions, pursuant to which courts examine the *State's interest in the action as a whole* in deciding real-party-in-interest questions. See *Ford Motor Co.*, 323 U.S. at 463; *In re New York*, 256 U.S. at 500; *Nuclear Eng'g Co.*, 660 F.2d at 250; *SDS West*, 640 F. Supp. 2d at 1052 (acknowledging that although a minority of courts have divided complaints according to the relief sought in deciding real-party-in-interest issues, "[m]ost have rejected [that approach] and viewed the complaint as a whole," and noting that "Illinois law appears to be in accord with the latter view" (citing *People ex rel. Hartigan v. Lann*, 587 N.E.2d 521 (1992)); *Abbott Labs.*, 341 F. Supp. 2d at 1062 (rejecting defendant's argument that the court should split the State's complaint into two categories – claims made on behalf of private entities and claims made on behalf of the State – and instead holding that "most courts analyze real party in interest questions by examining the state's interest in a lawsuit as a whole")); *Illinois ex rel. Scott v. Hunt Int'l Resources Corp.*, 481 F. Supp. 71, 74 (N.D. Ill. 1979) (holding that a court should look past a named party that does not have a pecuniary interest in the case to unnamed parties only in cases that "involve the collusive naming of a representative * * * to create jurisdiction * * *. On the other hand, the good faith naming of a representative that defeats federal jurisdiction has long been allowed" (citations omitted)).[3]

---

[3] Defendants attempt to distinguish *SDS West Corp.* on the ground that, unlike here, the defendant in that case sought removal on traditional diversity rather than CAFA grounds. *SDS West Corp.*, 640 F. Supp. 2d at 1049. In other words, *SDS West Corp.* hinged on the complete diversity requirement, rather than CAFA's minimal diversity requirement. Similarly, Defendants seek to distinguish *Hunt Int'l* on the ground that the court in that case held that there was no traditional diversity when the Attorney General was present in the case. *Hunt Int'l*, 481 F. Supp. at 74. Finally, Defendants state that *Lann* is inapposite because it involved not removal, but a rejection by the court of the defendants' effort to impose discovery obligations on the individuals for whom the state sought restitution through the action. *Lann*, 587 N.E.2d at 523. The Court acknowledges that factual peculiarities of all three cases set them apart from the case at bar, but nonetheless finds their enunciation and application of the general rules regarding real-party-in-interest questions to be instructive.

Under that approach, viewing a State's complaint as a whole, a court seeking to identify the real party in interest must ask "not whether the state alone will benefit, but whether the state has 'a substantial stake in the outcome of the case.'" *SDS West Corp.*, 640 F. Supp. 2d at 1052 (quoting *Abbott Labs.*, 341 F. Supp. 2d at 1062)). If the State seeks relief that affects the economic well-being of its citizens broadly, then the State is the real party in interest, and the court need not look to unnamed parties to determine if some of the claims asserted also would benefit them. See *Kansas ex rel. Stovall v. Home Cable, Inc.*, 35 F. Supp. 2d 783, 785-86 (D. Kan. 1998) (holding that "[t]he fact that one of the remedies sought by the State of Kansas is restitution to the allegedly aggrieved Kansas consumers does not transform the State of Kansas into a 'citizen' for purposes of establishing diversity jurisdiction"); *Hunt Int'l*, 481 F. Supp. at 74 (holding that because there was "absolutely no indication that the Attorney General sought to bring this class suit in order to defeat diversity jurisdiction * * * [t]his court will not disregard the presence of the Attorney General, the only plaintiff presently before the court"); *Lann*, 587 N.E.2d at 524-25 (holding that the State was a real party in interest when the Attorney General filed suit under the Illinois Consumer Fraud Act on behalf of residents who were specifically aggrieved by violations of the Act because the Attorney General decides whether to bring the litigation and maintains control of it in her role as protector of the public, and not as personal representative of the consumers for whom she seeks restitution). As many courts have held, a State is not automatically rendered a nominal party when it seeks *both* broad injunctive relief *and* monetary damages for injured residents, but rather may be found to be a real party in interest so long as the quasi-sovereign interest it asserts meets the "substantial stake" test. See *Home Cable Inc.*, 35 F. Supp. 2d at 785-86. To hold otherwise would be to prevent the plaintiff from acting as the master of the complaint and choosing its forum. See *Tanoh v. Dow Chem. Co.*, 561 F.3d

945, 953 (9th Cir. 2009) (restating the "well-established rule that plaintiffs, as masters of their complaint, may choose their forum by selecting state over federal court"); accord *Anderson*, 610 F.3d at 393 (agreeing with *Tanoh* in holding that a plaintiff, as master of the complaint, may plead around CAFA requirements to determine the forum); *cf. CVS Pharmacy*, 2011 WL 1902678, at *7 (stressing that "CAFA is also sensitive to deeply-rooted principles of federalism, reserving to the States primarily local matters" and that "[c]omity demands that we step most carefully before 'snatch[ing] case which a State has brought from the courts of that State, unless some clear rule demands it'" (quoting *Franchise Tax Bd. V. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21 n.22 (1983)).

A number of courts have expressly taken issue with the *Allstate* decision (followed by *Comcast*) on the ground that it disregarded the State's ostensible quasi-sovereign interest in at least some of the claims and "pierced" the pleadings to find that unnamed parties were real parties in interest. See *Portfolio Recovery Assocs., Inc.*, 686 F. Supp. 2d at 945-46 (stating that the legal analysis in *Allstate* is unpersuasive because it (1) "is counter to the Supreme Court's directive that removal statutes are to be 'strictly construed,' especially those that undermine the authority of the state" and (2) "pierced" the plaintiff's pleading although "it does not appear defendants had alleged that the plaintiffs used fraud to destroy federal jurisdiction and despite the fact that the Fifth Circuit acknowledged that the State * * * had the authority to bring *parens patriae* antitrust actions" (citations omitted)); *Virginia v. SupportKids Servs., Inc.*, 2010 WL 1381420, at *2 n.2 (E.D. Va. Mar. 30, 2010) (stating that *Allstate* was mistaken for the "glaring reason[]" that "the court in that case actually found that Louisiana was a real party in interest"). Most recently, a court in the Northern District of California granted plaintiff-States Washington's and California's motions to remand their suits against AU Optronics for

overcharging for LCD panels after concluding that the claim-by-claim approach taken in *Allstate* and *Comcast* was unsupported by the language or legislative history of CAFA. *In re: TFT-LCD (Flat Panel) Antitrust Litigation*, No. 07-cv-1827 SI, 2011 WL 560593, at *3 (N.D. Ca. Feb. 15, 2011) (stating that the court was "unpersuaded by defendants' argument that simply because CAFA was intended to broaden federal jurisdiction over class actions, federal courts are required to deviate from the traditional 'whole complaint' analysis when evaluating whether a State is the real party in interest in a *parens patriae* case" (citing *SDS West Corp.*, 640 F. Supp. at 1052)).

Here, Plaintiff argues that it has a substantial stake in the outcome of this case. Plaintiff contends that the treble damages for overcharges that customers and the State paid, as well ascivil penalties, declaratory relief, and injunctive relief that it seeks would secure a more honest marketplace and positively affect a substantial segment of the population. Plaintiff further argues that its sovereign interest in this type of action was recognized by the legislature when it designed the IAA to permit the Attorney General to bring *parens patriae* actions to recover damages for antitrust violations. See 740 ILCS 10/7. By virtue of the legislature's grant of express authority, Plaintiff argues, it has a considerable interest in the outcome of this lawsuit. Plaintiff further argues that it has a substantial interest in advancing its sovereign interest by enforcing its own laws – namely, the IAA. Finally, Plaintiff contends that its interest is neither diminished nor rendered nominal because the action in part seeks monetary relief for those Illinois residents who paid overcharges. Plaintiff contends that the damages component of the lawsuit could benefit Illinois's residents as a whole given that payment of damages against those individuals may have a deterrent effect.

In sum, viewing as a whole the nature and effect of the suit, Plaintiff argues that the potential of the suit to impact the Illinois populace writ large means that (1) Plaintiff is a real

party in interest, (2) the Court thus need not look beyond the complaint to determine whether unnamed plaintiffs have a more significant stake in the outcome of the litigation, and (3) the Court lacks diversity jurisdiction under CAFA and should remand the case to state court. See *Hunt Int'l*, 481 F. Supp. at 74 (remanding an action in which the Attorney General sought injunctive and monetary relief despite the fact that unnamed defrauded residents also stood to benefit from the suit); see also *Lann*, 587 N.E.2d at 524 (holding that injured consumers for whom the State sought restitution were not real parties in the State's *parens patriae* suit).

Defendants raise two arguments in response, both of which track *Allstate* in urging the Court to dissect the claims of the complaint and consider the relative import of the various claims asserted within it. First, Defendants argue that the State does not have a quasi-sovereign interest in recovering damages on behalf of a specific subset of residents. Therefore, Defendants contend, the State is not the real party of interest with respect to the money damages claims; rather, the injured residents are. Given that the injured residents are the real parties in interest, Defendants assert that federal diversity jurisdiction under CAFA exists, and the motion to remand should be denied. Second, Defendants contend that the amount of damages sought for private individuals in the State's damages claims is greater than the amount sought (pursuant to a statutory cap) in the State's claim for civil penalties. Defendants submit that the claim for injunctive relief thus "has little significance," because the State does not allege that the conspiracy to overcharge customers is ongoing. [50, at 5.] Defendants suggest that these facts belie the true nature of this action as one brought for the benefit of a select class of Illinois residents, thus making those residents rather than the State the real parties in interest.[4]

---

[4] Defendants cite *State of Calif. v. Frito-Lay, Inc.*, 474 F.2d 774 (9th Cir. 1973), for the proposition that monetary recovery for a subset of residents precludes sovereign interest in the case. In *Frito Lay*, the court ruled that the State attorney general did not have a quasi-sovereign interest in enforcing a federal antitrust law, as the law pertained to a different sovereign. The case is thus distinguishable from the one

12

After careful consideration of the parties' respective positions in light of the pertinent authority, the Court respectfully rejects Defendants' arguments and concludes that it should look to the complaint as a whole to determine the real party in interest. See *Ford Motor Co.*, 323 U.S. at 463; *In re New York*, 256 U.S. at 500; *Nuclear Eng'g Co.*, 660 F.2d at 250; *SDS West*, 640 F. Supp. 2d at 1052. However, the Court adds that even if it parsed the claims separately, the result would be the same in this instance because Plaintiff has a quasi-sovereign interest in both its claims for injunctive relief and penalties and its damages claims, which seek recovery on behalf of a wide range of consumers and aim to deter future antitrust conduct by corporations in Illinois. See *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 560593, at *5 (contrasting cases in which States sued only on behalf of limited groups of private parties).

The Court's conclusion is bolstered by the express purpose of the IAA, which is "to promote the unhampered growth of commerce and industry throughout Illinois." 740 ILCS 10/2. This goal is consistent with that of *parens patriae* actions at common law – namely, to allow the State to serve as the "watchdog of its quasi-sovereign interests." *Pennsylvania v. Mid-Atlantic Toyota Distributors, Inc.*, 704 F.2d 125, 129 n.8 (4th Cir.1983) (internal quotation marks and citations omitted). The IAA provides that:

> The Attorney General may also bring an action in the name of this State, as parens patriae on behalf of persons residing in this State, to recover the damages under this subsection or any comparable federal law. The powers granted in this Section are in addition to and not in derogation of the common law powers of the Attorney General to act as parens patriae.

740 ILCS 10/7. The IAA thus specifically authorizes the Attorney General to bring suit for damages in the public interest *on behalf of those individuals affected* by antitrust violations *in

---

at bar, in which the State seeks to enforce a state statute. Attorneys general have a sovereign interest in enforcing their own state laws. *Pennsylvania v. Mid-Atlantic Toyota Distribs., Inc.*, 704 F.2d 125, 131 (4th Cir. 1983). Thus, *Frito Lay* is not persuasive authority on the facts presented here.

*order to protect* the economic health and well-being of *the State*. See *Lann*, 587 N.E.2d at 524 (interpreting the Illinois consumer fraud act as imparting a duty on the attorney general to enforce the law, which was designed to protect the public, even as it sought damages for transactions involving individual consumers, and holding that "[a]lthough restitution may benefit aggrieved consumers * * * the legislature did not intend the individual consumers to be treated as parties to the action for any purposes even under a liberal construction of the Act"); see also *SDS West Corp.*, 640 F. Supp. 2d at 1051 (finding that "[a]lthough the number of persons directly harmed [and on whose behalf the State sought damages under the state consumer fraud act] may be small relative to Illinois's population, the indirect benefits of barring unscrupulous companies from soliciting further business accrues to the population at large. Indeed, that is why securing an honest marketplace is a quasi-sovereign interest. Thus, Illinois has a quasi-sovereign interest in this litigation"). Indeed, some courts have suggested that if a statute confers on the State alone authorization to bring suit, then the State is a real party in interest. *Brooks v. Tyger Const. Co., Inc.*, 1990 WL 488977, at *2 (M.D.N.C. Apr. 30, 1990). Here, given that the IAA limits standing for aggregated, indirect purchaser claims to the Attorney General, it would be contrary to the statutory language and purpose to hold that the Attorney General, representing the State, is not the real party in interest.[5]

In view of the State's quasi-sovereign interest in bringing this action, the State is a real party in interest in this case. The State is not rendered a nominal party by virtue of the damages

---

[5] Defendants argue that a finding of lack of jurisdiction would contravene Congress's intent in creating CAFA – namely, to prevent plaintiffs from "artificially structuring their suits to avoid federal jurisdiction." *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 407 (6th Cir. 2008). Yet, Defendants do not contend that Plaintiff fraudulently pleaded claims to avoid federal jurisdiction or colluded with private individuals for that purpose. (Indeed, it appears that Plaintiff has in good faith sued in its name alone.) Moreover, Defendants do not appear to dispute that the State has a quasi-sovereign interest in the claims for injunctive relief and civil penalties under the IAA.

claims that it asserts on behalf of particular Illinois residents. See, *e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 560593, at *5; *Lann*, 587 N.E.2d at 524. As a State, Plaintiff is not a citizen for diversity purposes. Accordingly, the minimal diversity jurisdictional requirements of CAFA have not been met.[6]

### B. Whether the Action Is a "Class Action" the Term Is Defined in CAFA

Plaintiff also argues that remand is warranted because the case is not a "class action," as that term is defined in CAFA. CAFA provides that "the term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). The Fourth Circuit recently held that a state statute or rule is similar to Rule 23 if, "at a minimum, [it] provide[s] a procedure by which a member of a class whose claim is typical of all members of the class can bring an action not only on his own behalf but also on behalf of all others in the class, such that it would not be unfair to bind all class members to the judgment entered for or against the representative party." *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 2011 WL 1902678, at *4 (4th Cir. May 20, 2011).

---

[6] Both parties devote a significant number of pages to arguing that CAFA's legislative history supports their respective positions. For example, Defendants submit that CAFA's legislative history indicates that the statute was not designed to prevent removal of suits brought by states' attorneys general, as Congress rejected an amendment that would explicitly have prevented such removal. However, as the Northern District of California recently found in its order remanding Washington and California State cases against AU Optronics to state courts, "the legislative history of CAFA * * * does not clearly demonstrate a congressional intent that CAFA should apply to *parens patriae* actions. See also *Harvey v. Blockbuster, Inc.*, 384 F. Supp. 2d 749, 752-54 (D.N.J. 2005) (surveying CAFA's legislative history and concluding that it was not Congress'[s] intent to encroach upon States' authority to bring *parens patriae* actions)." *In re TFT-LCD (Flat Panel Antitrust Litig.*), 2011 WL 560593, at *3. This Court need not delve into the legislative history to resolve the remand motion. However, the Court notes that, in view of the long history of *parens patriae* actions and the traditional approach to determining the real party in interest in a lawsuit, the absence of any express provision in CAFA authorizing removal of *parens patriae* suits more strongly suggests that Congress did not intend CAFA to apply to actions in which the State (through its Attorney General) asserts sovereign or quasi-sovereign interests in litigation.

The parties agree that this lawsuit was not filed as a class action under Rule 23, but rather as a *parens patriae* action under the IAA. The IAA provides in pertinent part that "[t]he Attorney General may * * * bring an action in the name of this State, as parens patriae on behalf of persons residing in this State, to recover the damages under this subsection or any comparable federal law." 740 ILCS 10/7(2). In the same provision, the IAA states that "no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General, who may maintain an action parens patriae as provided in this subsection." *Id.*

Plaintiff contends that a *parens patriae* action is so different in its nature, prerequisites, and procedural safeguards from a class action that the IAA's explicit grant of authority to the State to bring a *parens patriae* suit excludes this action from the ambit of CAFA. With respect to the nature of the suit, Plaintiff notes that *parens patriae* authority has its origin in common law rather than statute. Plaintiff also states that the function of *parens patriae* suits is to provide a substantive power to the State to protect its citizens rather than a procedural device to consolidate individual claims. See *Illinois v. Huddleston*, 816 N.E.2d 322, 337 (Ill. 2004). Plaintiff further states that while a class action generally is a private lawsuit pursued for private interests and represented by private attorneys who work on a contingency-fee basis, a *parens patriae* lawsuit is brought by a public entity in its sovereign or quasi-sovereign interest and represented by salaried states' attorneys. With respect to the prerequisites, Plaintiff contends that this type of suit is fundamentally different than a class action: the latter requires numerosity, typicality, and commonality, whereas the former imposes no such constraints. Finally, Plaintiff argues that class actions impose rigorous procedural safeguards to protect absent class members; by contrast, in *parens patriae* suits, the safeguards are limited to due process and the democratic

process. Plaintiff thus concludes that this action is a "separate and distinct procedural vehicle from a class action." *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 101, 102 (D.D.C. 2008) (holding that a District of Columbia consumer protection statute that authorized representative actions and did not reference class action requirements or mandate class certification was a separate and distinct procedural vehicle from a class action, and thus did not constitute a class action under CAFA); see also *Harvey v. Blockbuster, Inc.*, 384 F. Supp. 2d 749, 754 (D.N.J. 2005); *Portfolio Recovery Assocs., Inc.*, 686 F. Supp. 2d at 946-47; *cf. Comcast*, 705 F. Supp. 2d at 454.

Defendants counter that the authority bestowed on the State by the IAA to represent private consumers in essence makes the State a class action representative notwithstanding the *parens patriae* label of the suit. Defendants first point out that the suit is "congruent" with the MDL class actions that other States have brought against AU Optronics. Defendants then contend that because the IAA makes the State's authority to bring this type of suit an exception to the general rule against indirect purchaser class actions, it "clearly" intends that *parens patriae* actions should be substitutes for class actions and thus synonymous with them. According to Defendants, the IAA's authorization of this type of suit qualifies the suit as a class action under CAFA. Defendants cite *Comcast* in support of their argument. In *Comcast*, the court considered whether a *parens patriae* suit brought under a state statute was a class action under CAFA. *Comcast*, 705 F. Supp. 2d at 453-54. The court held that although the statute was not identical to Rule 23, it so mimicked the Rule with respect to its rigorous safeguards regarding absent parties that it qualified as a "similar statute" under CAFA. *Id.* at 454.

The Court finds Plaintiff's arguments persuasive: because (1) the case was not filed as a class action under Rule 23 (or a state equivalent) and (2) the case instead is a *parens patriae* suit

17

brought under the IAA, it is both in form and substance distinct from an action brought under Rule 23 or a state class action statute. To borrow from the Fourth Circuit's recent opinion in *CVS Pharmacy*, the IAA "authorizes the Attorney General to bring enforcement actions against violators and, in so doing, to pursue relief on behalf of aggrieved individuals. Yet that type of representation by the State is [not] characteristic of the representational nature of a class action * * *." 2011 WL 1902678, at *6. Rather, it "is more analogous to the role of the EEOC or other regulator when it brings an action on behalf of a large group of employees or a segment of the public." *Id.* Accordingly, the Court concludes that this action is not a "class action" under CAFA. See, *e.g.*, *id.*; *Portfolio Recovery Assocs., Inc.*, 686 F. Supp. 2d at 946-47; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 560593, at *6-*7; *Allstate*, 536 F.3d at 434-35 (Southwick, J., dissenting). Instead, it is "a statutorily authorized action" filed "on the State's behalf" by its top legal officer, the Attorney General. *CVS Pharmacy*, 2011 WL 1902678, at *4.

### C. Whether this Action is a "Mass Action" as that Term Is Defined by CAFA

CAFA provides that "mass actions" are removable to federal court. 28 U.S.C. § 1332(d)(11)(A). CAFA defines a mass action as "any civil action * * * in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional requirements under subsection (a) ['where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs']." 28 U.S.C. § 1332(d)(11)(B)(I) & § 1332(a).

Plaintiff argues that the mass action provisions of CAFA do not confer jurisdiction here for three reasons. First, Plaintiff states that this case does not satisfy CAFA's numerosity requirement. 28 U.S.C. § 1332(d)(11)(B)(i). Second, Plaintiff argues that the suit is not a mass

action because it does not meet CAFA's $75,000 jurisdictional threshold requirement for mass actions. *Id.* Third, Plaintiff contends that the suit does not fall within CAFA's jurisdictional exception for cases brought on behalf of the general public. See 28 U.S.C. § 1332(d)(11)(B)(ii)(III).[7]

The Court concludes that, for the same reasons that it found the State to be a real party in interest, this suit does not constitute a "mass action" under CAFA. See *Tanoh*, 561 F.3d at 952 (holding that CAFA's requirement of 100 or more plaintiffs refers only to actual, named plaintiffs); *Cal. Pub. Employees Ret. Sys. v. Moody's Corp.*, 2009 WL 3809816, at *7 (N.D. Cal. Nov. 10, 2009) (interpreting the mass action provisions of CAFA as requiring plaintiffs to appear and make claims in order to count toward the numerosity requirement, and refusing to count 490 unnamed plaintiffs represented by an unincorporated association who failed to do so toward the numerosity requirements); *Kitazado v. Black Diamond Hospitality Invs., LLC,*, 2009 WL 3209298, at *6 (D. Haw. Oct. 6, 2009). Rather, as another court recently summarized in words that apply equally here, "[b]ecause the State is a real party in interest and sues to protect and vindicate the rights of the public in general [under the IAA], this action is not a 'mass action.'" *Connecticut v. Moody's Corp.*, 2011 WL 63905, at *4 (D. Conn. Jan. 5, 2011).

---

[7] CAFA's mass action "carve-out" provision states that "the term 'mass action' shall not include any civil action in which (III) all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action * * *." 28 U.S.C. § 1332(d)(11)(B)(ii)(III).

### III. Conclusion

For the reasons stated above, the Court grants Plaintiff's motion to remand [28]; this case is remanded to the Circuit Court of Cook County.

Dated: June 6, 2011  _____
Robert M. Dow, Jr.
United States District Judge